ROSCOE T. GREEN & another *vs.* BALTIMORE AND OHIO RAILROAD COMPANY.

Suffolk.   March 3, 1910. — June 24, 1910.*

Present: MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Sale*, Passing of title.   *Carrier*, Of goods, Liability on shipping receipt.

Where a dealer in certain goods delivers to a railroad company a shipment of such goods and takes from the railroad company a non-negotiable shipping receipt by which the company agrees to transport the goods to a certain person named as consignee, who is in the habit of receiving consignments of these goods from the consignor and having the consignor draw upon him at the time of each consignment for a sum approximating the market value of the goods shipped, and the consignor thereupon draws on the consignee for such a sum representing the market value of the shipment and attaches the non-negotiable receipt to the draft, which he indorses to a local bank through which it comes to a bank at the city in which is the place of business of the consignee, who on its presentment accepts the draft and detaches and retains the shipping receipt, no title to the goods thus shipped passes to the consignee before his acceptance of the draft, by which he accepts the offer of the consignor to sell him the goods, and if, before such acceptance, the consignor asks the railroad company to deliver the goods to a person other than the consignee, and the railroad company at once complies with the request and delivers the goods to the third person before the draft has been presented to the consignee for acceptance, the consignee cannot hold the railroad company liable, either for a conversion of the goods, to which he has no title, or upon the shipping receipt, which contains no agreement with him.

CONTRACT or TORT for the value of two hundred crates of eggs, delivered to the defendant by H. P. Miller and Son on December 31, 1896, at Defiance, Ohio, and consigned to the

* The opinion in this case was withdrawn on an application for a rehearing.   This was denied on September 6, 1910, when the opinion was returned to the Reporter.

plaintiffs, alleging a conversion of the eggs, and also a liability of the defendant upon a shipping receipt issued by the defendant to H. P. Miller and Son and held by the plaintiffs. Writ dated May 28, 1897.

The case was tried in the Superior Court before *Bond,* J., without a jury. He found the facts which are stated in the opinion, and made a general finding for the defendant. At the request of the plaintiffs he reported the case for determination by this court. If the plaintiffs were entitled to recover, judgment was to be entered as the full court might determine to be proper; if the plaintiffs were not entitled to recover, judgment was to be entered for the defendant.

*F. H. Nash,* for the plaintiffs.

*J. M. Maloney,* (*F. G. Hayes* with him,) for the defendant.

LORING, J. In this case the judge made a general finding in favor of the defendant and on the facts found by him reported the case to this court at the plaintiffs' request.

It appears from the facts so found that on December 31, 1896, H. P. Miller and Son, at Defiance, Ohio, delivered to the defendant railroad company two hundred crates of eggs and took from it a non-negotiable shipping receipt, by which the defendant agreed to transport them to "——" and in which the plaintiffs were named as consignees, their place of business being given as " 82 So. Market St., Boston." The car in which the eggs were loaded was stated in the shipping receipt to be No. 16,502. The plaintiffs " were in the habit of receiving on consignment eggs " from Miller and Son. " Miller would draw on the plaintiffs at the time of each consignment for a sum approximating the market value. There was no agreement fixing the amount to be drawn."

Miller and Son drew on the plaintiffs for $1,100 and attached the non-negotiable shipping receipt to the draft. This draft was indorsed to a local bank, and through that bank it came to a bank in Boston. On January 5, 1897, it was presented with the receipt to the plaintiffs. They accepted it at that time and detached the receipt. On January 6 they paid the draft. But on January 3 (two days before the draft was presented for acceptance) " Miller requested the defendant to send car No. 16502 to John K. Lasher and Company instead of to the plaintiffs, and the defendant at once complied with that request."

" The plaintiffs have recovered a judgment against Miller for the value of the eggs including their commissions, but Miller was insolvent, and has since died, and the judgment has been in no part satisfied."

The main ground on which the plaintiffs contend that the finding was wrong is that some title to the eggs passed to them when the eggs were shipped on December 31, and that the defendant converted their property to its own use by delivering it to Lasher and Company " at once " on being notified to do so on January 3.

They rely in support of their contention on *Bailey* v. *Hudson River Railroad*, 49 N. Y. 70, and on *Bryans* v. *Nix*, 4 M. & W. 775. But neither case is an authority for their contention. In *Bailey* v. *Hudson River Railroad* the goods were shipped pursuant to an agreement that they should be sent as security for an overdue debt. In *Bryans* v. *Nix* (as in the case at bar) there was no debt due until the draft was accepted, and no agreement to accept a draft. It was held in *Bryans* v. *Nix* that the title passed by virtue of the agreement immediately upon an agreement being made, by the acceptance of the bill, without waiting until a factor's lien came into existence by the goods coming into the possession of the acceptor of the bill.

It has been insisted by counsel for the plaintiffs that their contention (that an interest in the eggs vested in them on the delivery of them to the carrier on December 31, 1896) is borne out by the opinion of Baron Parke in *Bryans* v. *Nix*, 4 M. & W. 775, although that point was not decided in that case. If that had been Baron Parke's view we should not have followed it. In our opinion it would have been wrong. But we do not think that Baron Parke entertained that view. The argument made in *Bryans* v. *Nix* was that no interest vested in the goods consigned in that case because " they [the plaintiffs,] being factors, could acquire no lien without actual possession." In disposing of that argument Baron Parke said that an agreement that the goods shall stand as security for a debt can be made with a factor as well as with any other person and if such an agreement is made with a factor he gets an interest in the goods on delivery to the carrier. Baron Parke could not have been taken to have meant that the interest vests in the factor on delivery

to the carrier where the goods are to stand as security for an acceptance to be made by the factor before the factor accepts the draft where there is no obligation on the part of the factor to accept it, even if he had not in terms guarded against that interpretation of his opinion. But he expressly guarded against being taken to have meant that. He said on page 791 : " It seems to us to be clearly this, — that Tempany agrees that the oats therein specified, shall be held from that time by the boat-masters, for the plaintiffs, in their own right, provided they accept the bill, as a security for its payment — that the masters agree so to hold them, and that, by the plaintiffs' assent and acceptance of the bill, the conditional agreement becomes absolute." And again on page 792 : " In our opinion, therefore, the plaintiffs had a complete title to the cargo of the boat 604, at least on the 7th of February, when they complied with the condition by accepting the bill."

In the case at bar the judge found that on January 3 Miller requested the defendant to deliver the car to Lasher and Company " and the defendant at once complied with that request." If the defendant delivered the eggs on January third or fourth, or on January fifth before the hour on the fifth when the plaintiffs accepted Miller and Son's draft, the act relied on by the plaintiffs as the act of conversion took place before any property in the eggs vested in the plaintiffs. The contract by which the plaintiffs contend that the title passed to them did not come into existence until Miller and Son's offer was accepted by the plaintiffs' acceptance of the draft on January 5.

We do not know what the evidence was on which the finding as to the delivery to Lasher and Company was made. In view of the general finding for the defendant it must be taken to be a finding that the plaintiffs failed to prove that their title accrued before the delivery to Lasher and Company.

There is nothing in the other contention of the plaintiffs, namely, that this is a bill of lading to bearer and so an instrument symbolical of the eggs without production of which delivery could not be made to any one.

The entry must be

*Judgment on the finding for the defendant.*